# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE MYERS, | No. 4:19-CV-01349 |
| Plaintiff, | (Judge Brann) |
| v. | |
| MAHONING TOWNSHIP and WILLIAM LYNN, T.S. SCOTT, and DEAN VANBLOHN, *individually and in their official capacities as Township officials*, | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 18, 2020

## I.      BACKGROUND

On August 2, 2019, Plaintiff Wayne Myers filed a two-count complaint

against Defendants Mahoning Township (the "Township"), William Lynn, T.S.

Scott, and Dean VanBlohn (all four together, the "Township Defendants"). On

October 4, 2019, the Township Defendants filed a motion to dismiss pursuant to

Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

On December 19, 2019, the Court dismissed Myers' second count with

prejudice. The Court also dismissed Myers' first count with respect to VanBlohn,

but provided Myers leave to amend. Myers did so in a timely fashion. On January

14, 2020, the Township Defendants moved again—this time, to partially dismiss

Myers' amended complaint for failure to state a claim.  The Township Defendants'

motion to partially dismiss is ripe for disposition.

For the reasons below, the Court grants the Township Defendants' motion to

partially dismiss.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a

complaint, in whole or in part, if the plaintiff has failed to "state a claim upon

which relief can be granted." A motion to dismiss "tests the legal sufficiency of a

pleading"[1] and "streamlines litigation by dispensing with needless discovery and

factfinding."[2] "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a

dispositive issue of law."[3] This is true of any claim, "without regard to whether it is

based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

---

[1]    *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.).

[2]    *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

[3]    *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

[4]    *Neitzke*, 490 U.S. at 327.

Following the Roberts Court's "civil procedure revival,"[5] the landmark

decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7]

tightened the standard that district courts must apply to 12(b)(6) motions. These

cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and

replaced it with a more exacting "plausibility" standard.[8]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"[9] "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[10] "Although the

plausibility standard does not impose a probability requirement, it does require a

pleading to show more than a sheer possibility that a defendant has acted

unlawfully."[11] Moreover, "[a]sking for plausible grounds . . . calls for enough facts

---

[5]    Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-20 (2012).

[6]    550 U.S. 544 (2007).

[7]    556 U.S. 662, 678 (2009).

[8]    *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41 (1957)) ("[a]cknowledging that *Twombly* retired the *Conley* no-set-of-facts test").

[9]    *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[10]   *Iqbal*, 556 U.S. at 678.

[11]   *Connelly v. Lane Const. Corp.*, 809 F.3d 780 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[12]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[13] No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[14]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[15] However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[16] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[17]

As a matter of procedure, the United States Court of Appeals for the Third Circuit has instructed that:

---

[12] *Twombly*, 550 U.S. at 556.

[13] *Iqbal*, 556 U.S. at 679.

[14] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[15] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[16] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'bare-bones' allegations will no longer survive a motion to dismiss.").

[17] *Iqbal*, 556 U.S. at 678.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim. Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[18]

"Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself."[19] Typically, to consider materials outside the complaint, a motion to dismiss must be converted to a motion for summary judgment.[20] However, "[c]onsideration of materials outside the complaint is not entirely foreclosed on a 12(b)(6) motion."[21] It is permissible to consider full text of documents partially quoted in complaint.[22] It is also permissible to consider documents relied upon by plaintiff in drafting the complaint and integral to the complaint.[23] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[24] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no

---

[18] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).

[19] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

[20] *See id.* and Fed. R. Civ. P. 12(d).

[21] *Faulkner,* 463 F.3d at 134.

[22] *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir. 1996).

[23] *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991).

[24] *Faulkner*, 463 F.3d at 134.

dispute exists regarding the authenticity or accuracy of the document."[25]  It must

also be clear that there exist no material disputed issues of fact regarding the

relevance of the document.[26]  In this matter, I find that these conditions have been

met, and will consequently consider the Township Defendants' attachments.

## B.     Facts

The facts alleged in Myers' amended complaint, which I must accept as true

for the purposes of this motion, are as follows.  I also include certain other facts

from documents integral to Myers' amended complaint.  The parties do not dispute

the accuracy or authenticity of these documents.

### 1.     The Parties

Myers was a member of the Township's Board of Supervisors from 2013 to

2017, when he resigned.  Scott and Lynn are also members of the Board and were

on the Board at the time of Myers' below deposition.  VanBlohn is the Township's

Zoning Officer.[27]  The Board appointed VanBlohn to be the Township's Zoning

Officer.[28]  VanBlohn's duties include reviewing applications and recommending

actions to the Board under the Township Zoning Ordinance and the Township

---

[25]  *Id.*; *see also e.g., Kaempe v. Myers*, 367 F.3d 958, 965 (D.C.Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir. 2001).

[26]  *Faulkner*, 463 F.3d at 134.

[27]  ECF No. 18 ("Amended Complaint") at ¶¶ 1, 3-5.

[28]  *Id.* at ¶ 7.

Subdivision and Land Development Ordinance ("SALDO"), the latter of which the Court explains below.[29]

### 2. Myers' Resignation from the Board

Myers resigned from the Board at the time of the Township's July 18, 2016 organizational meeting. (This is the meeting where appointments to Township positions, including that of Zoning Officer, are made.)[30] At the time Myers resigned, Myers made statements to the *Bloomsburg Press-Enterprise* expressing his displeasure and how fed up he was with how the Board was conducting business (meaning, outside of public purview), and that he was not going to put up with it.[31] These statements created publicity as to the methods by which the now-majority Township Supervisors were conducting business.[32]

### 3. Myers' October 31, 2018 Deposition Testimony

On October 31, 2018, Myers testified at a deposition relating to a lawsuit the Township had filed against Christine DeLong, a former Secretary/Treasurer of the Township. (DeLong was Secretary/Treasurer and a Supervisor at the time of Myers' resignation.) Myers testified on DeLong's behalf and "expressed his belief" that DeLong was wrongfully caused to resign just before being eligible for

---

[29]  *Id.* at ¶ 8.

[30]  *Id.* at ¶ 20; ECF No. 20-1.

[31]  *Id.* at ¶ 21.

[32]  *Id.* at ¶ 22.

retirement benefits.[33] Myers also testified that he resigned from the Board in 2017 because Lynn and Scott had violated the Pennsylvania Sunshine Act. The Sunshine Act requires agencies to deliberate and take official action on agency business in an open and public meeting.[34]

### 4. Myers' Efforts to Waive Municipal Requirements and Improve his Property

Myers owns and operates a school bus company on his property in the Township.[35] In order to expand and improve his company's parking lot, he needed approval from the Township.[36] Beginning in approximately June of 2018—before his deposition, but after his resignation and statements to the *Bloomsburg Press-Enterprise*—Myers had been in discussions with the Township about applications for permits to effectuate his expansion and improvement project. On June 12, 2018, Myers received a zoning permit to pave a portion of his parking lot. Myers then completed the first portion of the work he needed to do, without the Township requiring further approval.[37]

Also, before his deposition, but after his resignation and statements to the *Bloomsburg Press-Enterprise*, Myers was advised he would need a "Subdivision

---

[33]  *Id.* at ¶¶ 26-29.

[34]  *Id.* at ¶ 30; 65 Pa.C.S.A. §§ 701-16.

[35]  *Id.* at ¶ 17.

[36]  *Id.* at ¶ 18.

[37]  *Id.* at ¶¶ 31-32.

and Land Development Plan," per the Township's Subdivision and Land Development Ordinance ("SALDO"), to pave the remaining portion of his parking lot.[38]  Regarding the second portion of this work, the Township—specifically, VanBlohn—directed Myers to apply for a waiver of the Subdivision and Land Development Plan requirement.  Following the Township's direction, Myers applied for such a waiver at the cost of $1,500.[39]

### 5. The Board Denies Myers' Waiver Application

At a subsequent December 17, 2018 meeting of the Board, the Board denied Myers' application for a waiver.  The Board gave Myers no prior notice.  This denial was at VanBlohn's recommendation—despite VanBlohn's prior assurance and direction to apply for a waiver.[40]  Myers learned that his application had been denied when he received a letter from VanBlohn dated February 8, 2019.[41]

### C. Analysis

Myers persists in claiming retaliation under the First Amendment.  My earlier Memorandum Opinion laid out this claim's legal standard.[42]  I now analyze whether Myers' amended complaint has made out this claim against VanBlohn.

---

[38]  *Id.* at ¶ 33.

[39]  *Id.* at ¶¶ 35-36.

[40]  Amended Complaint at ¶ 37.

[41]  *Id.* at ¶ 39.

[42]  ECF No. 16 at 9-10.

The Township Defendants appear to concede that Myers has alleged two things: (1) his engagement in Constitutionally-protected conduct; and (2) sufferance of enough of a retaliatory action. But they argue that there is no "causal link" between these two things.[43]

Myers attempts to establish the requisite causal link through three tacks. First, Myers argues that VanBlohn knew about, and was therefore aware of, Myers' protected statements when VanBlohn took his retaliatory action.[44] Second, Myers argues that he has shown "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action." And third, Myers argues that he has shown "a pattern of antagonism coupled with timing to establish a causal link."[45]

### 1.    VanBlohn's Awareness

Whether VanBlohn was aware of Myers' protected statements turns out to be a key factor in all three of Myers' proffered arguments. Both the "temporal proximity" road and the "pattern of antagonism" road to causation require "aware[ness] of the protected conduct in the first place."[46] Indeed, to establish a

---

[43]    *See* ECF No. 20 at 8.

[44]    ECF No. 21 at 9-10.

[45]    ECF No. 21 at 11-13; *Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[46]    *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002).

causal link, a plaintiff must "allege facts that allow the Court to reasonably infer that each defendant was aware of the protected conduct."[47]

Myers claims that the below paragraphs from his amended complaint suffice to establish VanBlohn's awareness.

a. Paragraph 23: "The individual Defendants knew that the Plaintiff made these statements at the time of his resignation."

b. Paragraph 38: "Mr. VanBlohn recommended denying the waiver application because [of] his relationship with the individual Defendant Supervisors, the statements made by Plaintiff where Plaintiff expressed his belief publicly that the supervisors had been conducting business wrongfully, and based on the October 31, 2018, [sic] deposition testimony which by then was available to the Township."

c. Paragraph 41: "Knowing Plaintiff was not required to submit a Land Development Plan and did not need to apply for a waiver, the individual Defendants continued to deny and obstruct Plaintiffs' [sic] plans because of the statements made at the time of his resignation and to the Press Enterprise, as well as his testimony in the DeLong lawsuit."

Unfortunately for Myers, these paragraphs – and his amended complaint as a whole – do not establish VanBlohn's awareness. Myers makes conclusory allegations of VanBlohn's awareness and of the alleged cause for VanBlohn's recommendation. But Myers does not support these allegations with "alleged facts that would allow the Court to reasonably infer" VanBlohn's awareness.[48]

---

[47] *Cucchi v. Kagel*, No. CV 17-01597, 2018 WL 3752880, at *2 (E.D. Pa. Aug. 8, 2018) (*citing Ambrose*, 303 F.3d at 493)).

[48] *Cucchi*, 2018 WL 3752880, at *3. The Court notes that additional allegations in Myers' amended complaint – that VanBlohn "works at the direction and under the supervision of the Board," and that VanBlohn "is closely associated with . . . the individual Defendant

### 2. Temporal Proximity

Myers has also failed to establish "an unusually suggestive temporal proximity." Per the above, a little over six weeks passed between Myers' final instance of protected conduct (his deposition testimony on October 31, 2018) and the retaliatory action (denial of waiver application on December 17, 2018). This time period is too long to establish the "certain narrow circumstances" needed to "establish the requisite causal connection" via a free-standing "unusually suggestive proximity in time between the protected activity and the adverse action."[49]

### 3. Pattern of Antagonism

Further, Myers has failed to establish a "pattern of antagonism." Such a pattern "refers to intervening antagonism between the time of the protected activity and the time of the alleged retaliatory conduct."[50] Here, Myers has not alleged any "intervening antagonism" from VanBlohn.[51]

---

Township Supervisors" – are conclusory and therefore do not support Myers' case for causation. Amended Complaint at ¶ 7, 34.

[49] *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) (cleaned up); *see Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (temporal proximity of three weeks insufficient to establish causation); *Fischer v. Transue*, 2008 WL 3981521, at \*10 (M.D. Pa. Aug. 22, 2008) (same); *Killen v. N.W. Human Servs., Inc.*, 2007 WL 2684541, at \*8 (E.D. Pa. Sept. 7, 2007) (seventeen days insufficient to establish causation).

[50] *Kriss v. Fayette Cty.*, 827 F. Supp. 2d 477, 495 (W.D. Pa. 2011), *aff'd*, 504 F. App'x 182 (3d Cir. 2012).

[51] *See* Amended Complaint.

## III. CONCLUSION

The Township Defendants' partial motion to dismiss is granted. The Court dismisses Myers' first count as to Defendant VanBlohn. This dismissal is with prejudice.[52]

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[52] *Kasper v. Cty. of Bucks*, 514 F. App'x 210, 216 (3d Cir. 2013) (when plaintiff was "placed on notice of the defects in her pleadings" and filed an amended complaint that did not cure these defects, the district court did not need to "*sua sponte* offer [her] an additional opportunity to amend her complaint, because she had "already been afforded the opportunity to amend that we require in civil rights cases").